Dr. Thomas B. Brewer President Metropolitan State College 1006 11th Street Denver, CO 80204
Dear Dr. Brewer:
This letter responds to a request from the Trustees of the State Colleges in Colorado for an opinion as to whether Metropolitan State College (hereinafter "MSC") would be responsible for providing workmen's compensation insurance to students who are in the process of fulfilling a community service graduation requirement.
QUESTION PRESENTED AND CONCLUSION
If MSC institutes a community service graduation requirement, must it provide workmen's compensation insurance or reimbursement for the cost of such coverage for students who are in the process of fulfilling this requirement?
No.
ANALYSIS
The trustees have described the proposed community service requirement as follows. First, all MSC students will complete a specified number of hours of community service as a prerequisite to graduation. Second, no academic credit will be awarded to students for meeting the requirement. Third, although students will be responsible for making arrangements to satisfy the requirement, MSC may assist them in finding suitable placements. Fourth, students will be expected to perform their services for government agencies or organizations exempt from taxation under § 501(c)(3) of the Internal Revenue Code. However, certain services performed for nonexempt business organizations, such as nursing homes, may fulfill the requirement. Fifth, students may volunteer their services or receive compensation from the organizations for which they perform services. Finally, MSC will not supervise the students' performance. The purpose of the requirement is to encourage students to contribute to society and help meet community needs. It is not intended to provide students with job training, nor will the services be coordinated with specialized, in-school instruction.
"Workmen's compensation is a mechanism for providing cash-wage benefits and medical care to victims of work-connected injuries, and for placing the cost of these injuries ultimately on the consumer, through the medium of insurance, whose premiums are passed on in the cost of the product." 1 A. Larson, The Lawof Workmen's Compensation, § 1.00 (1990). The employer-employee relationship is the linchpin of the workmen's compensation scheme, which is designed to mutually benefit both the employer and the employee, protecting the former from the potentially ruinous consequences of employee tort liability, and providing the latter with no-fault protection from lost wages in the event of a work-related accident. 81 Am.Jur.2d Workmen'sCompensation, § 2 (1976).
Under the Workmen's Compensation Act of Colorado, §§ 8-40-101
to 8-54-127, C.R.S. (1986 1989 Supp.), liability for workmen's compensation coverage can be imposed upon MSC if the college and its students have entered into an employer-employee relationship pursuant to § 8-41-106(1)(a)(I)(A), C.R.S. (1986) or § 8-41-106(1)(a)(IV), C.R.S. (1989 Supp.). Workmen's compensation costs can also be assessed against MSC if the college sponsors its students in a cooperative education or student internship program pursuant to § 8-41-105(7)(b), C.R.S. (1986). Each of these alternative avenues of potential workmen's compensation liability will be analyzed below.
Section 8-41-106(1)(a)(I)(A), C.R.S. (1986) defines "employee" to be a "person in the service of the state, or . . . any public institution or administrative board thereof under anyappointment or contract of hire. . . ." (emphasis added). Under this definition, a student who is performing mandatory community service can be construed to be an "employee" of MSC only if he has been "appointed" by MSC or has entered into a "contract of hire" with MSC.
The term "appointment" is defined by Black's LawDictionary at 128 (4th ed. rev. 1968), to mean "[t]he designation of a person, by the person or persons having authority therefor, to discharge the duties of some office or trust." Under the scenario described by MSC, no student will be designated to discharge the duties of a particular office or trust. Therefore, no student will be appointed as an employee by MSC.
A "contract of hire" contemplates pay for services. InBlamires v. Board of Review, 584 P.2d 889, 891 (Utah 1978), the Utah Supreme Court defined "contract of hire" to be "any agreement under which one person performs personal services at the request of another who pays for the services" (emphasis added). The Supreme Court of Virginia adopted a similar definition in Charlottesville Music Center, Inc. v.McCray, 215 Va. 31, 205 S.E.2d 674 (1974): "(a) `contract of hire' is usually defined as an agreement in which an employee provides labor or personal services to an employer for wagesor remuneration or other thing of value supplied by the employer" (emphasis added).
Although case law indicates that the pay required for a "contract of hire" need not consist of money, something with calculable monetary value must be exchanged for the labor because, otherwise, there is no way to compute benefits. RockyMountain Dairy Products v. Pease, 161 Colo. 216, 422 P.2d 630
(1966). For this reason, gratuitous workers, or volunteers, have uniformly been excluded from coverage under the workmen's compensation statutes of the various states. 1C A. Larson,The Law of Workmen's Compensation § 47.41 (1990).
Students will not receive any wages or remuneration from MSC in exchange for performing community service. Furthermore, the Colorado Supreme Court has ruled that an educational degree "does not have exchange value or any objective transferable value on an open market." In re Graham, 194 Colo. 429, 574 P.2d 75
(1977). Therefore, even if MSC's imposition of a community service graduation requirement is viewed as a quid proquo for a college degree, the granting of such a degree is not the provision of something with calculable monetary value sufficient to support a contract of hire. Accordingly, students engaging in the required community service cannot be considered "employees" of MSC under § 8-41-106(1)(a)(I)(A), C.R.S. (1986).
Pursuant to § 8-41-106(1)(a)(IV), C.R.S. (1989 Supp.), students may nonetheless be deemed to be "employees" of MSC for workmen's compensation purposes if they are engaging in a college-sponsored job training or rehabilitation program:
 [A]ny person who may at any time be receiving training under any work or job training or rehabilitation program sponsored by any department, board, commission, or institution of the state of Colorado . . . and who, as part of any such work or job training or rehabilitation program of any department, board, commission, or institution of the state of Colorado . . . is placed with any employer for the purpose of training or learning trades or occupations shall be deemed while so engaged to be an employee of the respective department, board, commission, or institution of the state of Colorado. . . .
According to MSC's description, the planned community service requirement will not involve job training or rehabilitation. As long as MSC adheres to its expressed intention regarding the requirement, § 8-41-106(1)(a)(IV), C.R.S. (1989 Supp.) will not impose workmen's compensation liability.
Finally, § 8-41-105(7)(b), C.R.S. (1986), would require MSC to provide workmen's compensation coverage for students if the college has sponsored them in a "cooperative education or student internship program." A "cooperative education or student internship program" is defined by § 8-41-105(7)(c), C.R.S. (1986) to be:
 [a] program sponsored by an educational institution in which a student is taught through a coordinated combination of specialized in-the-school instruction provided through an educational institution by qualified teachers and on-the-job training provided through a local business, agency, or organization or any governmental agency in cooperation with the educational institution.
Since MSC's intention is not to provide students with job training, nor to coordinate the performance of community service with specialized, in-school instruction, no responsibility for workmen's compensation coverage is imposed by § 8-41-105(7)(b), C.R.S. (1986).
SUMMARY
MSC is not responsible for providing workmen's compensation insurance or reimbursement for the cost of such coverage for students who are in the process of fulfilling a community service graduation requirement.
Sincerely,
 DUANE WOODARD Attorney General
EDUCATION, HIGHER EMPLOYMENT WORKMEN'S COMPENSATION
Section 8-40-101 to 8-54-127, C.R.S. (1986 1989 Supp.) Section 8-41-106(1)(a)(I)(A), C.R.S. (1986) Section 8-41-106(1)(a)(IV), C.R.S. (1989 Supp.) Section 8-41-105(7)(b) and (c), C.R.S. (1986)
HIGHER EDUCATION, DEPT. OF Metropolitan State College
MSC is not responsible for providing workmen's compensation insurance or reimbursement for the cost of such coverage for students who are in the process of fulfilling a community service graduation requirement.